[NOT FOR PUBLICATION -- NOT TO BE CITED AS PRECEDENT]

# United States Court of Appeals
## For the First Circuit

―――――――

No. 99-1600

MASS. ELECTRIC CONSTRUCTION CO.,

Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION,

Respondent.

―――――――

ON PETITION FOR REVIEW OF A FINAL ORDER OF THE
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION

―――――――

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Stahl, Circuit Judge.

―――――――

Kieran B. Meagher for petitioner.
Terry Parker DeLeon, Attorney, U.S. Department of Labor, with whom Henry L. Solano, Solicitor of Labor, Joseph M. Woodward, Associate Solicitor for Occupational Safety and Health, and Bruce Justh, Counsel for Appellate Litigation, were on brief for respondent.

―――――――

February 15, 2000

―――――――

**COFFIN, <u>Senior Circuit Judge</u>**.  Mass. Electric Construction Co. ("Mass. Electric") petitions for review of an administrative decision finding that the company violated a federal electrical safety standard, resulting in an employee injury.  The company asserts that it should not be cited or fined because the episode resulted from unforeseeable employee misconduct, and it contends that the administrative law judge's (ALJ) conclusion to the contrary fails to accurately reflect the record.  After carefully reviewing the pertinent materials, including audiotapes of interviews with company employees, we have concluded that the ALJ's decision was adequately supported.

We briefly summarize the factual background, which is fully detailed in the ALJ's thorough opinion. The incident underlying this case occurred while employees of Mass. Electric were installing a neon sign at a parking garage in Rhode Island.  The job foreman, Michael McCormick, suffered serious burns from an electrical explosion that occurred as he worked on an energized circuit.  It is undisputed that neither McCormick nor an employee assisting him was using proper insulation or other appropriate protective equipment for working on a live circuit, in violation of 29 C.F.R. § 1926.416(a)(1).  The company responded to a citation from the Occupational Safety and Health Administration (OSHA) with the affirmative defense of "unpreventable employee misconduct," asserting that McCormick acted against company policy and his supervisor's instructions by failing to consult with the supervisor and obtain proper safety gear before working on the live circuit.

-2-

The ALJ rejected the defense, finding that the company did not adequately enforce its safety program by "insisting upon safe methods and practices at all times" and that it "could have prevented the violation with the exercise of reasonable diligence." Opinion at 8. The ALJ relied, inter alia, on interviews with McCormick and his supervisor, Stephen Smith, that were conducted shortly after the accident happened, and he discounted and termed "contradictory" testimony more favorable to the company that was given by the two men at a later hearing. The Occupational Safety and Health Review Commission denied discretionary review, and Mass. Electric then sought judicial review.

The company assails the ALJ's judgment on three fronts. It contends that the judge (1) clearly erred in finding that the Mass. Electric witnesses' testimony at the hearing was "starkly at odds" with their prior statements; (2) lacked record support for his conclusion that the company could have taken steps to prevent the accident;[1] and (3) abused his discretion and tainted the proceedings by allowing the Secretary of Labor's main witness to remain in the courtroom during presentation of Mass. Electric's defense, and thereafter permitting the witness to use "unverified hearsay" to testify in rebuttal.

We review a Commission decision "to determine whether its factual findings are supported by substantial evidence in the

---

[1] This contention essentially embraces the first one; Mass. Electric contends that the ALJ's rejection of the employee misconduct defense is not supported by record evidence at least in part because he wrongly characterized McCormick and Smith's various statements as inconsistent.

-3-

record, 29 U.S.C. § 660(a), and whether its legal conclusions are `arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law[.]' 5 U.S.C. § 706(2)(A)." Reich v. Simpson, Gumpertz & Heger, Inc., 3 F.3d 1, 2 (1st Cir. 1993).

We first address the challenge to the ALJ's factual findings. The chief point of contention is whether McCormick was given the discretion in a phone conversation the day before the accident to work on the energized circuit without first calling Smith to obtain proper protective equipment. Mass. Electric contends that the statements made by McCormick and Smith in taped interviews with an OSHA compliance officer and their later testimony at the Commission hearing prove that the two men anticipated another phone conversation after McCormick examined the electrical panel to determine if he could work on it live. As we shall explain, however, the taped interviews suggest that McCormick acted in a foreseeable way when he did the work without first contacting Smith. See P. Gioioso & Sons, Inc. v. OSHRC, 115 F.3d 100, 109 (1st Cir. 1997) (to establish employee misconduct, "`an employer must do all it feasibly can to prevent foreseeable hazards, including dangerous conduct by its employees'") (quoting General Dynamics Corp. v. OSHRC, 599 F.2d 453, 458 (1st Cir. 1979)).

There is no doubt that the hearing testimony depicts a much more explicit conversation between McCormick and Smith than do the statements taken from the two men a year earlier in interviews with the compliance officer. At the hearing, Smith testified that McCormick was "[a]bsolutely not" authorized to work on the panel

without getting back to Smith for the dual purpose of letting Smith know how McCormick wanted to proceed and – if he determined he could work on the circuit live – to request appropriate safety equipment. McCormick, too, testified that Smith told him, "just go back and take a look at it and see what you think and then give me a call."

The statements given by both men to the compliance officer just after the accident, however, suggest that more was left to McCormick's discretion than simply the preliminary decision about whether to work with the power on or off. A few responses are telling:

> Compliance officer: "Did he say to call me and let me know before you do anything or was it basically left up to your . . . ?"
>
> McCormick: "I think it was left up to my judgment."
>
> —
>
> Smith: "I said if you're not comfortable with it get back to me and let me know, let me know what you need to do it if you're comfortable, and you want to do it like that. . . ."
>
> Compliance officer: "Okay. So if he felt comfortable doing it like that and he wasn't . . . he didn't need to get back to you he could just go . . ."
>
> Smith: "Use your own judgment."

The impression that it was left to McCormick's discretion not only whether to work on the panel live but also what safety measures to take was given by other portions of the interview statements as well. Smith, for example, stated that the company provided safety equipment for working on an energized circuit,

noting that "it's all available to them if they ask for it."  He also observed, "I guess he felt the way he was doing it he was comfortable with."  McCormick's responses also reflected an assumption that he had discretion in choosing how to proceed.  He noted that workers frequently use the "material at hand," and, in this case, he felt the cardboard that was available to insulate the parts of the panel would do the job.  He had seen that done, he said, "many times."  He also stated that he sometimes wears gloves when doing a job like this, and sometimes does not, even though gloves are required by company policy.[2]

In addition, although McCormick stated that his decision to go ahead and do the job was made on the "spur of the moment," the evidence shows that he did not act hastily.  He took the time to sharpen his knife, insulate his tools, and place the cardboard between sections of the distribution panel.  In so doing, he exercised his judgment and took deliberate steps that could be understood as intended to satisfy the instructions given to him by Smith, which even Mass. Electric acknowledges were (1) to ascertain if you can do this job without shutting off the power, and (2) if you can, to let me know what safety equipment you need. Neither McCormick nor Smith reported during their interviews a direct instruction not to proceed until McCormick obtained the specific protective gear required by company and OSHA policy.[3]  It is

---

[2] He explained that he chose not to wear gloves this time because the work was delicate.

[3] We note Mass. Electric's claim that the ALJ credited an erroneous statement by the compliance officer that McCormick had

therefore reasonable to conclude from a reading of McCormick's and Smith's interview accounts that the steps McCormick took were all he felt he "needed" to ensure safety, thereby satisfying Smith's instructions, notwithstanding company policy. In sum, both McCormick's and Smith's interviews reasonably can be taken as evidence that the company permitted McCormick to forge ahead if he thought he could do the work safely without using the protective equipment that is conceded to be mandatory.[4]

We recognize that the interview statements also could be construed to support an understanding on the part of Smith that McCormick, in accordance with official company policy, would request the proper safety equipment before working on a live panel. It is for that reason that we disagree with the ALJ's depiction of the interviews and later testimony as "starkly at odds." Nonetheless, the ALJ's determination that McCormick at least impliedly was given authority to proceed without the specific

---

told the officer that he (McCormick) had been given an explicit okay to "go ahead and install" the circuit breakers while the panel was charged. We agree that the interview statements were not this explicit, but there is no indication that the ALJ relied on the compliance officer's testimony rather than on the actual taped interviews, which he quoted later in his opinion. Presumably, the ALJ understood that the compliance officer's testimony contained inferences based on what he had heard.

[4] In its reply brief, Mass. Electric emphasizes that none of Smith's references to "use your own judgment" constituted permission to McCormick to work on the panel without safety equipment. This contention does not necessarily take the company to the result it desires. McCormick did take safety measures, but they did not comply with federal regulations. The ALJ concluded that Smith left up to McCormick the nature of the precautions he would take, and Smith's and McCormick's interviews permit an inference that this approach was not unique to this job.

equipment is supported by the interviews. And we cannot fault the judge's discrediting of testimony at the hearing that minimized the scope of McCormick's discretion; that testimony was given a year after the accident, when all concerned presumably were more aware of the legal significance of the McCormick-Smith conversation.

If the record had established unequivocally that McCormick had no authority to proceed until after he called Smith, either to plan a power shutdown or to obtain the required protective equipment, the company's employee misconduct defense would be more powerful. While the company's reliance, as found by the ALJ, on the usually good judgment of an experienced electrician may have been reasonable, it was not in compliance with federal regulations. We therefore must credit the ALJ's conclusion that McCormick's failure to take proper safety measures could have been avoided with more diligent supervision and enforcement of company policies, negating Mass. Electric's employee misconduct defense. See Gioioso, 115 F.3d at 109-10 ("Even if an employer establishes work rules and communicates them to its employees, the defense of unpreventable employee misconduct cannot be sustained unless the employer also proves that it insists upon compliance with the rules and regularly enforces them.").

We touch only briefly on Mass. Electric's other claim, that the ALJ improperly allowed rebuttal testimony from OSHA's compliance officer. The ALJ rejected this claim as moot on the ground that the disputed testimony was not material to the disposition of the case. Our review gives us no reason to think

the testimony played any role in the judge's decision. Because any error therefore would be harmless, we decline to consider the matter further.

The petition for review is denied.